**Michael PELLA, Plaintiff,**

v.

**Paul ADAMS, et al., Defendants.**

**No. CV–R–85–0098–ECR.**

United States District Court,
D. Nevada.

Sept. 18, 1989.

James W. Wessel, Carson City, Nev., for plaintiff.

Brian McKay, Atty. Gen., Carson City, Nev., for defendants.

MEMORANDUM DECISION
AND ORDER

EDWARD C. REED, Jr., Chief Judge.

The facts of this matter were fully set forth in *Pella v. Adams,* 638 F.Supp. 94 (D.Nev.1986). Concisely stated, a green leafy substance was discovered in Plaintiff's cell. His urine tested positive for the presence tetrohydrocannabinol (THC), the principal psychoactive ingredient in marijuana. At a subsequent disciplinary hearing, he requested an additional test at his expense, which was denied. In an order issued on December 22, 1988 702 F.Supp. 244, this court determined that the test itself—the Enzyme Multiple Immunoassay Test (EMIT test)—and the manner in which the test was conducted, were sufficiently reliable to satisfy the "some evidence" standard applicable to the review of decisions by a prison disciplinary committee. *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 457, 105 S.Ct. 2768, 2775, 86 L.Ed.2d 356 (1985). Nevertheless, the Court was concerned about the disciplinary committee's denial of Plaintiff's request for an alternative test—the only opportunity Plaintiff would have to collect evidence that might exonerate him. An inmate's right to present evidence at a disciplinary hearing is not absolute however. As stated in the prior order:

An inmate's right to call witnesses and present evidence necesarily is limited by the need of prisons to preserve security and to provide efficient and effective discipline. *Id.,* [*Wolff v. McDonnell,* 418 U.S. 539], at 566 [94 S.Ct. 2963, 2979, 41 L.Ed.2d 935] [1974]; *see also Ponte [v. Real* ], 471 U.S. [491] at 495–96 [105 S.Ct. 2192, 2195, 85 L.Ed.2d 553] [ (1985) ]; *Baxter v. Palmigiano,* 425 U.S. 308, 321, [96 S.Ct. 1551, 1559, 47 L.Ed.2d 810] (1976). "Prison officials must have the necessary discretion to keep prison disciplinary hearings within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority ..." *Wolff,* 418 U.S. at 566 [94 S.Ct. at 2979]. Thus, an inmate has no right to collect evidence or call witnesses

where permitting him to do so would be "unduly hazardous to institutional safety or correctional goals." *Ponte,* 471 U.S. at 495 [105 S.Ct. at 2195] (quoting *Wolff,* 418 U.S. at 566); *see also Hughes v. Rowe,* 449 U.S. 5, 9 [101 S.Ct. 173, 175, 66 L.Ed.2d 163] (1980); *Baxter,* 425 U.S. at 320–21, [96 S.Ct. at 1559], *Harrison [v. Pyle],* 612 F.Supp. [850], at 854 [ (D.Nev.1984) ].

Nevertheless, prison officials cannot arbitrarily prevent inmates who are subject to disciplinary proceedings from calling witnesses and collecting evidence. Prison officials must have a legitimate peneological reason for limiting an inmate's efforts to defend himself before a prison disciplinary committee. *Ponte,* 471 U.S. at 498–99 [105 S.Ct. at 2196–97]; *Harrison,* 612 F.Supp. at 855.

702 F.Supp. at 248. Consequently, the Magistrate was instructed to hold an evidentiary hearing to ascertain Defendants' reasons for denying Plaintiff's request for an alternative testing. The Magistrate held a hearing on February 22, 1989, and on March 15, 1989, her Report and Recommendation was Filed. (Docket # 67). She recommended deciding in favor of Defendants. Plaintiff has filed objections to the report. (Docket # 69).

## STANDARD OF REVIEW

■ The Court must balance the interests of the inmate against those of the institution, for even if a regulation impinges on the constitutional rights of an inmate, it is valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Four factors to consider when applying this rational relationship test are:

1) the existence of a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; 2) the existence of alternative means of exercising the right[s] that remain open to prison inmates; 3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and 4) the absence of ready alternatives as evidence of the reasonableness of the regulation (the presence of obvious easy alternatives may evidence the opposite).

*Michenfelder v. Sumner,* 860 F.2d 328, 331 (9th Cir.1988). Additionally, the traditional deference accorded to prison officials' assessment regarding the operation of their prisons continues to apply under this test. *Id.* Although this case does not present a challenge to a prison *regulation,* the court believes that the *Turner* test is appropriate.

It cannot be reasonably contested that institutions have as a paramount penological interest in maintaining control over the institution. To do so, inmates who violate the institution's rules and regulations are subject to disciplinary action, and the institutions have a legitimate penological interest in seeing that disciplinary action is meted in a timely fashion. In the present case, for some unexplained reason, Plaintiff's urine sample was not delivered for analysis until fifty-six (56) days after it was obtained. The disciplinary hearing however was held just nine (9) days after the testing. Plaintiff presents the argument that after such a delay, a few more days would not make much difference. Defendants counter argue that after such a delay, the need to proceed with the disciplinary process was even more compelling. The Court believes, and Defendants imply, that the institution has a greater interest in not allowing inmates to be able to dictate when disciplinary proceedings will commence.

Because an inmate does not have independent access to the necessary materials to conduct a scientifically accepted testing procedure/process, an inmate does not have access to an alternative testing procedure unless the institution makes it available. Consequently, an inmate will not be able to obtain alternative test results without the cooperation of institution.

■ Defendants argue that the administrative burden would be onerous if they were required to accommodate an inmate's request for an alternative urinalysis. "When accommodation of an asserted right

will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 107 S.Ct. at 2262. The Court can envision that prison officials would encounter numerous difficulties if inmates were allowed to have an alternative test conducted. Prison personnel would have to transport the sample to a laboratory capable of performing the alternative test if the laboratory they prefer to use is not capable of doing so, and would the costs of the alternative test include the additional administrative/personnel costs involved in obtaining the alternative test? Determining what would be the alternative test would be problematic—would that be a decision made by the inmate, since he is paying for it, an unfettered decision perhaps. What about those situations where one inmate can afford to pay for the test but another cannot? Allowing some inmates to avail themselves of the additional evidence but not others calls to mind Justice Black's admonition that "there can be no equal justice where the kind of trial a man gets depends on the money he has." *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Afterall, the court has already determined that two sequential EMIT tests complies with the mandates of due process. Furthermore, the resources available to Defendants, financial as well as personnel, is without question limited.

Based on the above, the Court finds that Defendants had a legitimate, penological interest in denying Plaintiff's request for an alternative urinalysis test.

IT IS, THEREFORE, HEREBY ORDERED that the Magistrate's Report and Recommendation is ADOPTED; summary judgment shall be entered for Defendants. The Clerk of the court shall enter judgment accordingly.