Darrell CARTER, Plaintiff,

v.

James FAIRMAN, Jr., et al.,
Defendants.

No. 86C7523.

United States District Court,
N.D. Illinois, E.D.

Dec. 29, 1987.

Robert Gomberg, Gomberg & Sharfman, Chicago, Ill., for plaintiff.

Neil F. Hartigan, Glenn Grevengoed, Office of Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Darrell Carter ("Carter") has sued several employees of the Illinois Department of Corrections ("Department") under 42 U.S.C. § 1983 ("Section 1983"), charging they violated his Fourteenth Amendment due process rights in the course of prison disciplinary proceedings. Defendants have moved to dismiss Carter's Amended Complaint (the "Complaint")[1] under Fed.R.Civ. P. ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons indicated in this memorandum opinion and order, the motion is granted.

### Facts[2]

1. Initially Carter acted pro se in tendering a self-prepared complaint. When this Court found his allegations passed the legal test of non-frivolousness so as to support filing in forma pauperis, it followed its consistent practice of appointing counsel from this District Court's trial bar to represent Carter. Appointed counsel then filed the Complaint on his behalf.

2. Rule 12(b)(6) principles require this Court to accept as true all well-pleaded factual allegations, drawing all reasonable inferences in Carter's favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam). In this instance the Complaint (cited "¶ —") states his factual allegations with striking clarity.

On March 13, 1986 [3] Carter was a prisoner at Department's Joliet Correctional Center ("Joliet"). While Carter was in the West Cellhouse, under the supervision of a foreman known to him only as Chris, a fight took place between several inmates and staff (¶¶ 9, 10). Carter did not participate (¶ 11). Prison officials placed all inmates present at the time of the fight in temporary confinement and placed Carter in investigative segregation for 30 days (¶ 12).

On March 24 Carter was transferred to Department's Pontiac Correctional Center ("Pontiac"). On March 26 officials served Carter with an Inmate Disciplinary Report (the "Report") charging him with several offenses arising from the March 13 fight (¶ 14 and Ex. A).

Defendants Lieutenant W. Hayes, G. Renfro and Donald Mertz, all Department officers assigned to Joliet (¶¶ 4, 5, 6 and 15), served as the Adjustment Committee ("Committee") on the charges. They met on March 31 at Pontiac, where Carter was present and testified (¶¶ 15, 16). While Carter did not make a written request before the hearing that any witness be called, he did ask the Committee to interview Chris (¶¶ 16, 28, 29). Though the Committee indicated it would do so (Ex. B),[4] it did not (¶¶ 30, 34). It found Carter guilty of the charges on the date of the hearing, and its finding was approved by defendant James Fairman (Joliet's warden) the next day (¶¶ 18, 19). Carter's punishment consisted of:

1. revocation of 360 days of "good time";
2. demotion to C-grade status for 360 days; and
3. segregation time for 360 days.

### Carter's Claims

Carter now asserts two due process violations:

---

1. Department's failure to hold the hearing within eight days of discovering his alleged involvement, in violation of Department's own regulation; and
2. the ·Committee's failure to interview Chris.

Each contention will be considered in turn.

### 1. Hearing Delay

■ Illinois Administrative Code ch. 20, § 504.80(a) reads in part:

The Adjustment Committee shall be convened within eight calendar days after the commission of the offense or its discovery unless the committed person is unable to participate in the hearing.

Carter argues that because the fight occurred 18 days before the Committee met, Department violated Section 504.80(a).

Defendants say they complied with that provision, pointing to the Report's notation that the offense was discovered March 25 (just six days before the hearing). Defendants seem to believe that by including the Report as a Complaint exhibit, Carter has adopted its factual allegations as part of his Complaint. Otherwise the date of discovery of the offense would be a factual matter outside the Complaint that could not be considered on a motion to dismiss.

But Carter cannot fairly be said to adopt the factual allegations contained in the Report merely by including it as an exhibit.[5] Rather the Complaint can reasonably be read to allege (or to imply) that Department discovered the violations and Carter's alleged involvement on the date of the fight. Defendants' contention to the contrary might have been appropriate in a Rule 56 motion for summary judgment, but it has no place in a motion to dismiss.

Defendants saved their legitimate dismissal argument until ·their reply memorandum, depriving Carter of the opportunity to

---

3. All relevant dates are in 1986, so any year references will be omitted in the balance of this opinion.

4. What Ex. B reflects is the Committee's decision finding Carter guilty of the offense charged, its statement of the reasons for that finding and then the following statement:

Comm to mail decision after interviewing inmates [sic] witness

5. That would obviously make no sense. After all, the Report also contains allegations of violations of Department's regulations, as to which Carter specifically claims innocence.

respond. In that reply defendants correctly said that even if the minimum time requirements of Section 504.80(a) were violated, that does not of itself violate due process. In that respect *Caruth v. Pinkney,* 683 F.2d 1044, 1052 (7th Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983) is squarely on point.

Complaint Count I alleges no additional facts that, if coupled with the asserted violation of Section 504.80(a), would suggest a due process violation. Count I must therefore be dismissed. Because Carter had no real opportunity to confront the dispositive issue, however, such dismissal is without prejudice to Carter's right to cure the flaw. If he is able to file a Second Amended Complaint alleging additional facts necessary to state a claim under the Due Process Clause, he may do so on or before January 15, 1988 in this Court's chambers.

### 2. Failure To Call a Witness

Carter's second claim for relief is based on the Committee's failure either to call Chris at the hearing or to interview him after the hearing but before reaching its decision, despite Carter's request at the hearing that it do so. Neither contention succeeds.

■■■ It has been clear since *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) that a prisoner facing disciplinary charges may be allowed to call a witness when doing so "will not be unduly hazardous to institutional safety or correctional goals." While

the Committee need not provide a contemporaneous explanation for denying a request to call a witness, the burden of establishing a legitimate reason for such denial remains with the prison official (*Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985)). Mere articulation of a reason does not immunize the official from suit (*id.*).[6]

■■■ Given Carter's right to present witnesses coupled with the just-described burden on defendants, it is not possible to say on the basis of the Complaint's well-pleaded factual allegations that defendants' articulated reasons for not hearing Chris were sufficient.[7] Nevertheless the Complaint itself alleges facts that justify dismissal. Carter was given the Report on March 26. It specifically notified him of his right to request that a witness be called, and it included a detachable form on which he could request witnesses (Ex. A). Carter did not sign the Report (¶ 14), and he made no written request before the hearing (¶ 28).

Illinois Administrative Code ch. 20, § 504.80(g)(2) (quoted in ¶ 27) says:

the committed person may request witnesses in writing, prior to the hearing, or may be granted a continuance if, for a good cause, he failed to make this request in a timely manner before the hearing.

Carter does not allege either that he requested a continuance or that he had good cause for not requesting Chris's appearance before the hearing. Thus he failed completely to comply with the regulation. Carter does not contend the regulation it-

---

**6.** Defendants describe the holdings in both *Wolff* and *Ponte* inaccurately, stating for example (D.Mem. 5):

Prisoners do not have a right to confront and cross examine witnesses against them at an adjustment committee hearing.

That is simply not true: They do have such a right—albeit a constrained one. Indeed, our Court of Appeals has confirmed there may be circumstances in which denial of a continuance to allow a prisoner to identify witnesses on his behalf violates due process (*Davis v. Lane,* 814 F.2d 397, 402 (7th Cir.1987)). Defense counsel—the Attorney General's office—represent Department and its officials in countless prisoner Section 1983 cases. Even apart from the entirely tenable proposition that the public's

lawyers (whether from the Department of Justice, the Solicitor General's office, the United States Attorney's office, the Attorney General's office, the States Attorney's office or the Corporation Counsel's office) should be held to a higher standard of candor as to the state of the law than lawyers for private litigants, defense counsel here should certainly know better than to advance the argument they have.

**7.** Defendants fall into the same mistake on this claim as on the delayed hearing claim, relying on entries they themselves made on the Adjustment Committee Summary attached as Exhibit B to the Complaint as establishing facts in their favor. That approach must be rejected for the same reasons already given in the text.

self violates due process, and it certainly does not appear to do so: Its requirement of an advance written request seems geared to allow efficient operation of Adjustment Committee hearings, and the safety-valve provision allowing continuances for good cause prevents injustice. Carter cannot now complain that the Committee violated his rights when his own procedural default left the Committee with no way to have his witness present.[8] Count II therefore fails to state a claim upon which relief may be granted.

### Conclusion

Even on the basis of all factual allegations in Carter's Complaint, coupled with all reasonable factual inferences in his favor, his Complaint does not state a claim upon which relief may be granted. Accordingly the Complaint is dismissed in its entirety, but without prejudice to Carter's filing a Second Amended Complaint based on Count I in this Court's chambers on or before January 15, 1988. If no such amended complaint is filed by that time, this action will be dismissed.

---

**8.** Carter contends his constitutional right to call witnesses may be waived only pursuant to a knowing and intelligent waiver appearing in the record of the disciplinary hearing. His only authority for that proposition is an intermediate state court decision requiring such a waiver of the right to civilian assistance in complex cases (*Johnakin v. Racette,* 111 A.D.2d 579, 489 N.Y.S. 2d 643 (1985)). Such a requirement would be inconsistent with the Supreme Court's explicit holding (handed down just ten days before *Johnakin*) that prison officials may deny a request for reasons that do not appear in the record (*Ponte,* 471 U.S. at 497–98, 105 S.Ct. at 2196–97).