21 F.3d 430
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Charles ELLIS, Plaintiff-Appellant,
v.
Howard A. PETERS, III, et al., Defendants-Appellees.
 No. 93-1846.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 5, 1994.*
Decided April 6, 1994.
 
 Before CUMMINGS, KANNE, and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Charles Ellis, an inmate at the Pontiac Correctional Center at all times relevant to this action, filed a civil rights suit against Howard Peters, the warden of Pontiac, and several correctional officers in their individual and official capacities pursuant to 42 U.S.C. Sec. 1983. In the complaint's first count, Ellis alleged that the officers violated his procedural due process rights because they waited more than three months after his alleged possession of drugs and drug paraphernalia to charge him with an offense, and because they denied him the right to have witnesses testify during the ensuing disciplinary hearing. In addition, he contended that the finding of guilt was based on insufficient evidence. In the second count, Ellis alleged that Captain Darrell Miller conspired with the other defendants by filing false disciplinary reports to harass him and to justify his removal as the barber in the segregation unit of the prison. The district court granted summary judgment in favor of the defendants, and Ellis appeals.
 
 
 2
 Upon de novo review of the district court's grant of summary judgment, Harris v. Bellin Memorial Hosp., Nos. 92-2785 & 92-2942, slip op. at 2 (7th Cir. Jan. 7, 1994), we AFFIRM for the reasons stated in the district court's Order. In addition, we note that Ellis failed to provide any facts supporting his harassment claim other than his own conclusory statements found in his affidavit.[1] Id. at 12 (plaintiff's conclusory statements in deposition insufficient to raise a genuine issue of fact). Because we do not find that Ellis raised any claim regarding the denial of his numerous prison grievances found in the record, our affirmance does not extend to the district court's discussion of the Illinois' prison grievance procedure on page 10 of its Order.
 
 
 3
 AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 4
 Charles Ellis, Plaintiff,
 
 
 5
 vs.
 
 
 6
 Howard Peters, et al., Defendants.
 
 No. 91-2016
 March 11, 1993
 ORDER
 
 7
 The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. Sec. 1983. The plaintiff claims that the defendants, various Pontiac Correctional Center officials, violated the plaintiff's constitutional rights by denying him due process. This matter is before the court for consideration of the defendants' motion for summary judgment. For the reasons stated in this order, the motion will be allowed.
 
 
 8
 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." Black v. Henry Pratt Co., 778 F.2d 1278, 1281 (7th Cir.1985).
 
 
 9
 However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988).
 
 FACTS
 
 10
 The following facts are undisputed: The plaintiff is a state prisoner, confined at the Pontiac Correctional Center at all times relevant to this action. Each of the defendants is or was a correctional official employed at the prison.
 
 
 11
 On May 17, 1989, the plaintiff had a seizure in his cell at the Pontiac Correctional Center. The plaintiff had a history of epileptic seizures. The defendant Gragert, an internal affairs investigator, conducted an inquiry into the incident. Despite the plaintiff's medical history, Gragert attributed the paroxysm to a drug overdose, based on the testimony of another inmate, Williams. On September 1, 1989, Gragert issued the plaintiff a resident disciplinary report charging him with a violation of Departmental Rule 203, [possession of] Drugs and Drug Paraphernalia.
 
 
 12
 On September 7, 1989, the plaintiff appeared before a prison Adjustment Committee (comprised by the defendants Huskisson, Esquivel and Landrus). No witnesses were called to testify on the plaintiff's behalf. The committee found the plaintiff guilty of drug possession. The defendant Peters approved the committee's decisions.
 
 
 13
 The plaintiff received approximately six, allegedly false, disciplinary reports in August and September, 1990. The plaintiff apparently was found guilty of each of the charges.
 
 DISCUSSION
 
 14
 No material facts are in dispute and the court concludes that the defendants are entitled to judgment as a matter of law. The record suggests no due process violation stemming from any of the disciplinary proceedings in question. Furthermore, the plaintiff has no cause of action regarding the denial of his ensuing grievances. The defendants' motion for summary judgment accordingly will be granted.
 
 
 15
 The disciplinary proceedings did not violate the plaintiff's constitutional rights. In prison disciplinary proceedings, an inmate is entitled to: (a) receive advance written notice of the charges against him; (b) appear in person before an impartial hearing body to contest the charges; (c) call witnesses and present documentary evidence in his defense (subject to the discretion of correctional officials; and (d) receive a written statement of the reasons for the disciplinary action taken. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974); Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir.1988). Polygraph tests are admissible in disciplinary proceedings. Lenea v. Lane, 882 F.2d 1171, 1174 (7th Cir.1989).
 
 
 16
 Here, the plaintiff received all the procedural safeguards mandated by the Constitution. The plaintiff received a copy of the disciplinary report stating the charges against him in advance of the hearing.[1] The plaintiff was allowed to appear before the Adjustment Committee. Additionally, the plaintiff received the Adjustment Committee summary stating its reasons for finding him guilty of drug possession.
 
 
 17
 While the parties dispute whether the plaintiff requested witnesses, there is no triable issue. The Adjustment Summary indicates that the plaintiff did not request witnesses. Furthermore, that portion of the disciplinary report designed to be completed and detached to request witnesses remains intact. Nevertheless, the plaintiff maintains that he requested a witness at the start of the hearing.
 
 
 18
 In his deposition, the plaintiff acknowledged that he was familiar with the procedures for requesting witnesses; he further admitted that he did not submit a witness request slip in advance of the hearing because he did not trust prison officials. Rather, the plaintiff states that he orally requested witnesses at the outset of the hearing. Even assuming that the plaintiff did request witnesses at the hearing, the Adjustment Committee properly denied the plaintiff's request as untimely.[2] See Ill.Admin.Code, tit. 20, Sec. 504.80(f)(2); 504.80(h)(3) ("The Committee may disapprove requests that are not received prior to the hearing."); Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir.1992).
 
 
 19
 The plaintiff further asserts that the prison's delay in charging him amounted to a due process violation. Illinois Administrative Code, Title 20, Section 54.80(a) (1988) reads in relevant part: "The Adjustment Committee shall be convened within eight calendar days after the commission of the offense or its discovery...." (emphasis added). The court rejects the plaintiff's argument that his constitutional rights were violated by prison officials' four-month delay in initiating disciplinary proceedings.
 
 
 20
 The disciplinary report specifically states that the plaintiff was being charged as a result of "further investigation," which included administration of a polygraph test to inmate Williams. As noted on the disciplinary report, the polygraph results were not received until September 1, 1991; Gragert issued his disciplinary report that same day. The plaintiff received the disciplinary report on September 1, 1991, and his initial hearing was held on September 7, 1991, both within the Administrative Code's time limits. While prison officials had been aware, of course, of the plaintiff's seizure in May, the "discovery of the offense" must logically refer to the discovery of an inmate's wrongdoing. Were prison officials required to charge inmates within eight days of every incident, the prison would be unable to investigate such matters fully and carefully.
 
 
 21
 In any event, a violation of Section 504.80(a) in and of itself does not amount to a constitutional violation. The requirements of due process outlined in Wolff do not impose an eight-day limit on charging and trying inmates on prison disciplinary infractions. See Carter v. Fairman, 675 F.Supp. 449, 451 (N.D.Ill.1987); Caruth v. Pinkney, 683 F.2d 1044, 1052 (7th Cir.1982) (per curiam), cert. denied, 459 U.S. 1214 (1983). The time lapse in charging the plaintiff was justified and did not deprive him of due process.
 
 
 22
 Similarly, the plaintiff's argument that there was an inadequate statement of reasons for finding him guilty is without merit. It is important to note that this court does not sit in review of the correctness of prison disciplinary decisions. The plaintiff can only prevail on his Fourteenth Amendment claim if the procedures used to arrive at that sanction do not comport with due process. There is sufficient basis for a reviewing court to approve the disciplinary board's decision if "some evidence" supports the decision made by the board. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir.1984). Here, the record is satisfactory.
 
 
 23
 The investigating officer who issued the disciplinary ticket reported the following observations:
 
 
 24
 Due to further investigation into an incident involving inmate Reginald Williams A-72431, Charles Ellis A-50058, Ellis was found lying on the floor of his cell 311 West Cellhouse by Williams. Testimony from Williams and polygraph results that inmate Ellis had a outfit in his arm when Ellis was found lying on the floor in cell 311. From further investigation, testimony from inmate Williams and polygraph results received this date 9-1-89 in this office, Inmate Ellis A-50058 is being charged with the above charges. INQ548PON89 and polygraph results are on file.
 
 
 25
 The Adjustment Committee's May 17, 1989, report recorded the following proceedings:
 
 
 26
 Report Read, Inmate states all charges are fake, and he had a seizure.
 
 
 27
 After reviewing the available information, the Committee found the plaintiff guilty of drug possession. Their stated reasons for the decision were as follows:
 
 
 28
 Based on the observation of the reporting employee, evidence submitted on 5-17-89 inmate was seen in ER and inmate refused treatment. Based on investigation conducted by internal affairs, during polygraph inmate did admit he used cocaine, past history of similar offenses, also inmate Williams' A-72431 statements to polygraph examiner that inmate Ellis had an outfit in his arm and tested truthful, the Committee is satisfied the violation occurred as reported.
 
 
 29
 All of the above evidence provided ample basis to support the Committee's guilt-finding.
 
 
 30
 The plaintiff's so-called "exonerating evidence" is not persuasive. In 1991, Williams executed an affidavit stating that he had never informed on the plaintiff. However, Williams' self-serving denial may well have been made to protect himself from retaliation or from being labeled as a "snitch." There is no reason to believe that prison officials, the presumably impartial Adjustment Committee [and later, grievance officials reviewing the matter] conspired to concoct Williams' testimony and to invent fake polygraph findings. This court cannot hear new evidence; the Committee properly relied on statements attributed to Williams in 1989.
 
 
 31
 Furthermore, the plaintiff's assertion that he was never in Cell 311 is spurious: all along the plaintiff maintained that he was lying in his cell because he had suffered an epileptic seizure. The plaintiff cannot now claim that it was another inmate altogether. In fact, the plaintiff's own Exhibit E reveals that, when advised of the results of his testing, the plaintiff admitted to the polygraph examiner that he and Williams had been using cocaine when he'd had a seizure. The court finds no due process violation stemming from the September 1, 1989, disciplinary report.
 
 
 32
 In Count II of his complaint, the plaintiff further charges that the defendant Miller ordered certain subordinates to write false disciplinary reports on various occasions (August 9th, 16th and 21st, 1990, and September 1st, 14th and 17th, 1990) in order to justify reassigning the plaintiff to another job. The plaintiff claims that on September 1, 1990, Defendant Miller knowingly wrote a false report charging the plaintiff with stealing cigarettes; that day, Defendant Boland also issued the plaintiff a fabricated report charging him with disobeying a direct order. On September 13, 1990, the defendant Miller ordered the defendant Roper to enter a report falsely stating that the plaintiff had failed to report to his work assignment. The record does not indicate whether the plaintiff was found guilty of the various charges.
 
 
 33
 There is no reason why Miller would have had to initiate false disciplinary proceedings solely to justify the plaintiff's reassignment. The plaintiff had no legitimate claim of entitlement to his job assignment, see Wallace v. Robinson, 940 F.2d 243, 248 (7th Cir.1991), cert. denied, 112 S.Ct. 243 (1992); nor was he entitled to procedural due process in conjunction with his termination. Id. "Illinois does not give every prisoner a right to hold a job, or any particular job.... [N]o statute, regulation, or practice with a force of a regulation curtails the discretion of prison officials to assign a prisoner to any job on whim." 940 F.2d at 244-45. Miller could have terminated the plaintiff for any constitutionally permissible reason or for no reason at all; the record provides no basis whatsoever for the plaintiff's bald assertion that Miller directed the disciplinary action.
 
 
 34
 Even assuming that the defendants did fabricate disciplinary reports against the plaintiff, he has no federal cause of action. Allegations of false disciplinary reports do not state a Fourteenth Amendment claim where due process is afforded. Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984). The Seventh Circuit Court of Appeals has reasoned that the due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses. The plaintiff does not allege that he was denied any of the procedural due process safeguards mandated by Wolff, supra.[3] Because there is no issue as to whether the plaintiff was afforded full due process, the defendants are entitled to judgment as a matter of law on the plaintiff's claim that the disciplinary reports were false.
 
 
 35
 The court likewise finds no due process violation in the defendant Hutchinson's rejection of the plaintiff's grievances. Illinois' statutory prison grievance procedure creates no substantive rights. Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982). Hence, the plaintiff had no protected interest in the satisfactory resolution of his grievance. Even assuming that the plaintiff did have a legitimate objection to the disciplinary proceedings, Hutchinson's failure to rule favorably on the plaintiff's grievance is not actionable under 42 U.S.C. Sec. 1983.
 
 
 36
 In sum, no material facts are in dispute and the court concludes that the defendants are entitled to judgment as a matter of law. The record does not raise an a triable issue that any of the disciplinary proceedings in question deprived the plaintiff of due process. Furthermore, the plaintiff has no cause of action regarding the denial of his prison grievances concerning the disciplinary proceedings. Consequently, the defendants' motion for summary judgment must be granted.
 
 
 37
 IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (docket # 35) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.
 
 
 38
 Enter this 11th day of March, 1993.
 
 
 39
 /s/ Harold A. Baker
 
 HAROLD A. BAKER
 United States District Judge
 
 
 *
 Plaintiff-Appellant submitted a request for oral argument when he filed his appellate brief. After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement was filed. Upon consideration of plaintiff-appellant's previous request, the briefs, and the record, the request for oral argument is denied, and the appeal is submitted on the briefs and the record
 
 
 [1]
 In its Order, the district court states that the record does not indicate whether Ellis was found guilty of the various disciplinary charges filed in August and September of 1990. Upon review of the summaries of the grievance hearings related to these charges, however, we find that Ellis was found guilty of the offenses reported on August 9 and 16 and September 1. The charges filed on August 21 and September 13 were dismissed. No record was found of the September 17 disciplinary report or its resolution
 
 
 [1]
 The plaintiff complains that the officer simply left the ticket in his cell rather than allowing the plaintiff to sign the acknowledgment form. However, the plaintiff does not allege that he did not receive the ticket. Requiring officers personally to serve inmates with disciplinary tickets would protect prison officials from lawsuits charging lack of notice of charges. Nevertheless, in the case at bar there is no problem because the plaintiff admits to having received a copy of the disciplinary report
 
 
 [2]
 Again, it should be noted that the Adjustment Committee summary states that no witnesses were requested. If an inmate requests witnesses at the start of a hearing and the request is denied as improper or untimely, then the summary should reflect accordingly, rather than stating that no witnesses were requested
 
 
 [3]
 To the contrary, while not binding on the court, the court notes that grievance officers reviewed the various disciplinary proceedings and found the plaintiff's challenges to be without foundation