*794TEXTO COMPLETO DE LA SENTENCIA
El recurrente Rafael Rodríguez Carrasquillo nos solicita que revisemos y revoquemos la determinación de la Administración de Corrección que lo halló incurso en la conducta imputada en una querella que él alega no cumplió los criterios establecidos en el Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío Comunitarios, Reglamento Núm. 6994 de 29 de junio de 2005, vigente para la fecha en que ocurrieron los hechos en controversia. [1]
Luego de evaluar los méritos del recurso y con el beneficio de las comparecencias de ambas partes, resolvemos confirmar la determinación recurrida.
Veamos los antecedentes fácticos que justifican esta determinación.
I
El 13 de junio de 2008, la Oficial Correccional Virginia Suárez presentó una querella en contra del recurrente Rodríguez Carrasquillo por cierta conducta exhibida por éste durante el período en que recibía la visita de unos familiares. En la querella original, la oficial Suárez describió los actos en que incurrió el recurrente del siguiente modo: “Mientra[s] me encontraba ejerciendo mis funciones en el salón de visita, llegaron visita[s] para tres confinados, las cuales pretendía[n] sentarse juntas para compartir entre ellas. Cuando llegan los confinados se percatan que no est[á]n sentadas juntas[.] El confinado Rafael Rodríguez Carrasquillo se molest[ó] y dijo a la visita de [é]l que la oficial es una cabrona[.] Esto lo escuchó la oficial María Rodríguez[,] la cual me lo informa”. La copia de esta querella que fue entregada al recurrente no tenía número asignado y se refería al código 207, que corresponde al acto prohibido de nivel II de seguridad conocido como “pornografía”. No obstante, el acto se describió en la querella como “conducta obscena e indecorosa”. De esta manera fue notificada al recurrente el 14 de junio de 2008, cuya firma acredita que se le entregó la copia ese día a las 4:00 p.m. por la Sargento Elsie I. Cruz.
Al recurrente también le entregaron la copia de lo que parecía ser la misma querella con el número 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, pero con el código y la descripción del acto prohibido modificados. Es obvia la alteración de ambos renglones. En la segunda copia se le atribuyó el acto prohibido correspondiente al código 209, que es “disturbio”. La fecha y hora de la querella permanecieron iguales, como igual permaneció la fecha y la hora en que se le entregó la copia al recurrente. La Investigadora de Vistas corroboró el dato de la entrega de la copia de la querella enmendada al recurrente antes de la vista. Esta funcionarla señaló en su informe: “Se le leyeron sus derechos y se le entregó copia de la querella enmendada, la cual fue discutida con el querellado. Éste solicitó que se entrevistara a los confinados Pedro Beltrán Carrasquillo y Ramón Seda Villafañez.” Apéndice de la parte recurrida, pág. 1. El día de la entrevista, el recurrente entregó un escrito a la Investigadora en el que planteó las deficiencias de la querella y negó que los hechos ocurrieran como se relataron en la querella. (Apéndice de la parte recurrida, págs. 2-5.)
El 25 de junio de 2008, se llevó a cabo la vista disciplinaria, es decir, cinco días después de recibir la copia de *795la querella “enmendada” y doce días después de ocurrir el incidente. Luego de evaluar la prueba documental presentada por los funcionarios querellantes y la Investigadora de Vistas, el Comité de Disciplina Institucional (CDI), como ente adjudicador, por ser un acto prohibido de nivel II de seguridad, halló incurso al recurrente en la falta descrita en el código 209, esto es, en disturbio. Dos días más tarde, el señor Rodríguez Carrasquillo solicitó la reconsideración de esa resolución por el fundamento de que la determinación del CDI no estaba apoyada por la prueba y se hizo en violación del debido proceso de ley. Argumentó que el procedimiento disciplinario no cumplió lo dispuesto en la Regla 9 del Reglamento 6994, que establecía que, al presentarse la querella, el Oficial de Querellas tenía que asignarle un número y registrarla en la bitácora antes de notificarla al confinado. Éste debía recibir copia fiel de la querella iniciada en su contra un día después de presentada. Alegó el recurrente que la copia de la querella que él recibió no tenía número de querella y la conducta imputada no correspondía al código disciplinario allí asignado.
El 15 de agosto de 2008, el Oficial de Reconsideración de la Administración de Corrección declaró no ha lugar la solicitud de reconsideración del recurrente. Resolvió que la determinación del Comité de Disciplina Institucional se hizo mediante preponderancia de la prueba, la cual fue suficiente para encontrar incurso al confinado en la falta imputada. La agencia administrativa concluyó que la prueba que tuvo ante sí fue evidencia directa, al escucharse el comentario soez contra la oficial querellante en el área de visita frente a otros confinados y sus familiares. Además, sostuvo que el querellado no sometió otra prueba contundente que derrotara la prueba sometida por la oficial querellante. En la resolución recurrida no se hizo determinación alguna sobre la alegación relativa a las deficiencias de la querella original.
Inconforme, el confinado presentó ante nos este recurso de revisión en el que plantea que la Administración de Corrección cometió los siguientes errores: (1) violar el debido proceso de ley al denegarle al recurrente su solicitud de presentar como testigos a su familia; y (2) al no acoger el reclamo del recurrente de que se verificara la Regla. 9 del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío Comunitarios de 29 de junio de 2005, que establece que una vez presentada la querella, el oficial de querellas tiene que asignarle un número y registrarla en la bitácora antes de notificarla al confinado.
Veamos cada señalamiento por separado.
n
No hay controversia sobre el hecho de que en Puerto Rico los confinados tienen derecho a un mínimo de garantías que les aseguren el debido proceso de ley en todo procedimiento adversativo generado o dirigido por la autoridad correccional. Véanse Pueblo v. Falú Martínez, 116 D.P.R. 828, 836 (1986); Álamo v. Adm. de Corrección, res. el 15 de enero de 2009, 175 D.P.R._(2009), 2009 J.T.S. 9, págs. 392-393.
En la esfera federal se reconoce a los confinados el derecho a una notificación adecuada de los cargos que se le imputan; a presentar prueba testifical y documental a su favor, en la medida en que ello sea consistente con la seguridad de la institución; y a que la resolución emitida exponga la evidencia considerada y los fundamentos de la decisión. El confinado no tiene derecho a estar asistido de abogado o a que se le brinde un período preparatorio amplio para enfrentarse a los cargos. Véase Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454 (1985); Ponte v. Real, 471 U.S. 491, 497 (1985); Baxter v. Palmigiano, 425 U.S. 308, 321 (1976); Wolff v. McDonnell, 418 U.S. 539, 566, 570-571 (1974).
La jurisprudencia federal tampoco ha reconocido el derecho del confinado a confrontar o a contrainterrogar a los testigos presentados por la agencia para sostener la imputación de una falta disciplinaria, porque ello podría poner en peligro la seguridad de estas personas y alterar el orden institucional. Baxter v. Palmigiano, 425 U.S. a las págs. 322-323; Wolff v. McDonnell, 418 U.S. a las pág. 562-563. [2]
En síntesis, debido a la naturaleza particular del ambiente carcelario y a los riesgos de seguridad presentes en
*796los procesos que involucran a distintos miembros de la población penal, la garantía del debido proceso, bajo el palio de la Constitución federal, sólo exige que se brinde al confinado un trámite justo y respetuoso de su dignidad, aunque sin las garantías que se ofrecen en otros procedimientos de naturaleza adjudicativa formal. Hewitt v. Helms, 459 U.S. 460 (1983); Overton v. Bazzeta, 539 U.S. 126, 131 (2003).
Veamos cuál es el alcance de las prerrogativas que atañen el caso de autos en Puerto Rico.
A
En su primer señalamiento de error, el recurrente plantea que no se le permitió presentar como testigos a sus familiares en la vista.
La Regla 10 del Reglamento Disciplinario disponía que todos los casos de una querella de Nivel I, II y III serían referidos a un Investigador de Vistas para que realizara la investigación de los hechos. Este servía como colector ímparcial de pruebas y su deber era investigar los cargos imputados ai confinado durante el proceso de disciplina. En aquellos casos en que el confinado no tuviera la capacidad de presentar su propia prueba, le sería permitido al Investigador de Vistas hablar en sustitución del confinado para presentar la prueba que fue recopilada en el informe del investigador. No obstante, el Investigador de Vistas carecía de facultad para emitir recomendación o determinación alguna en el caso. Regla 4(J) del Reglamento Disciplinario.
Es decir, aunque el confinado no tenía ni tiene derecho a la asistencia de abogado, podía estar asistido por el Investigador de Vistas para que le ayudara a presentar su postura o la prueba que tuviera a su favor. Reglas 4(J), 11(F)(2) y 11(J) y 14(J). Otros deberes y funciones de este investigador se describen con más detalle en el inciso (B) de la Regla 10 del Reglamento 6994. Lo que nunca se ha permitido es la representación de un confinado por otro confinado. Regla 14(J).
Incluso, en el caso de Álamo v. Adm. de Corrección, res. el 15 de enero de 2009, 175 D.P.R._(2009), 2009 J.T.S. 9, se admitió que la figura del Investigador de Vistas servía de enlace entre la autoridad sancionadora y el confinado imputado, o entre éste y el confinado querellante, para proteger su integridad física. Se reconoce en esta opinión que el Investigador de Vistas servía como un ente imparcial encargado de recopilar toda la prueba pertinente al trámite de la querella disciplinaria y su asistencia durante la vista podía incluir “la obtención de declaraciones de testigos e información adicional”. Reglas 4(J) y 14(J) del Reglamento.
El Reglamento 6994 permitía que el confinado presentara prueba a su favor y que pidiera que se citaran testigos a su favor, pero el Oficial Examinador era quien determinaba si se citaba a esos testigos a la vista. Reglas 11(L), 14(L). Según el inciso K de esta Regla 14, “el confinado tiene derecho a hacer declaraciones, a presentar pruebas a su favor durante la vista o a guardar silencio”. Si el confinado quería hacer una declaración, el Investigador de Vistas la tomaría de manera detallada, con cualquier información adicional que observara con respecto al comportamiento del confinado durante la entrevista.” Regla 10(B)(1) del Reglamento.
En cuanto a los testigos externos, la Regla 16(A) y (H) proveían lo siguiente: “Podrán citarse testigos externos únicamente cuando sea necesario, conveniente y no constituya un riesgo para la seguridad institucional o del propio testigo”; [...] “la mera solicitud de citación de testigos por parte de un confinado, sin exponer las razones por las cuales resulta esencial la comparecencia de éste, no es razón suficiente para obtener una declaración de este testigo o citarlo a testificar. Sólo serán considerados aquellos testigos que tengan información pertinente y que sean esenciales para el caso.”
La Regla 16(K), por su parte, disponía que el Oficial Examinador de Vistas Disciplinarias o el Presidente del Comité de Disciplina Institucional podía excluir las declaraciones de testigos o rehusar llamar a declarar a un testigo cuando: (1) el testimonio resulta irrelevante; (2) es innecesario; (3) repetitivo; o (4) “resulta peligroso para la seguridad de la institución o metas correccionales.”
*797Un confinado no tenía a la fecha de la querella (ni tiene hoy) derecho a confrontarse con los testigos en su contra. La Regla 16(C) así lo establecía: “[N]o será necesaria, ni se solicitará, la comparecencia de [...] empleados querellantes, ni testigos adversos, cuando su conocimiento sobre el incidente surja de manera clara de la querella disciplinaria, documentos complementarios y/o el Informe del Investigador de Vistas.” La Regla 16(D) añadía que “la declaración del Oficial Querellante en la querella disciplinaria, al igual que todo documento adicional, declaraciones, testimonios o respuestas a interrogatorios preparados por el Investigador de Vistas constituirán prueba de referencia admisible en los procedimientos ante el Oficial Examinador de Vistas Disciplinarias y el Comité de Disciplina Institucional.”
El Reglamento no exige la aplicación de las Reglas de Evidencia ni de Procedimiento Civil o Criminal, con el fin de mantener la flexibilidad necesaria en el manejo y control de los conflictos que surjan en las instituciones correccionales. Por la naturaleza de los procesos disciplinarios y las necesidades institucionales, sólo se requiere que la prueba del querellante sea preponderante para sostener la querella.
El Tribunal Supremo validó el procedimiento descrito por la necesidad de preservar la seguridad y el orden en las instituciones carcelarias del país. Después de todo, la Administración de Corrección merece deferencia en la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de administrar y preservar el orden en las instituciones carcelarias. Alamo v. Adm. de Corrección, 2009 J.T.S. 9, a la pág. 394; Cruz Negrón v. Adm. de Corrección, 164 D.P.R. 341, 356-357 (2005). Véase también a Bell v. Wolfish, 441 U.S. 540, 547-548 (1979).
El recurrente solicitó que se citara a los miembros de su familia para demostrar que él no incurrió en la conducta imputada. La solicitud fue denegada por el Oficial Examinador. Tal actuación no fue contraria a derecho y no es suficiente para provocar la revocación de la sanción recurrida.
B
En su segundo planteamiento de error, el recurrente plantea que el 14 de junio le entregaron la querella por conducta obscena e indecorosa, código 207, incoada por la Oficial Correccional Virginia Suárez; que se percató de que la querella no tenía número asignado; y que los oficiales correccionales, al percatarse del defecto, alteraron el documento que ya le habían notificado, le pusieron un número de querella, luego le cambiaron el código imputado originalmente, no le notificaron la nueva querella hasta el día en que fue entrevistado por la Investigadora de Vistas. Celebrada la vista, lo hallaron incurso por un código distinto al que le fue notificado en la primera ocasión.
El recurrente nos solicita que evaluemos una situación similar ocurrida a otro confinado, a quien le fue desestimada una querella porque carecía de número al momento de serle notificada. Nos sometió copia de la querella y resolución desestimatoria de ese otro confinado en el apéndice de su recurso.
La Procuradora General distingue el caso señalado por el recurrente del caso de autos. Alega que en este caso el recurrente fue notificado de la querella enmendada, con número y código correcto, antes de celebrarse la vista, lo que no ocurrió en el caso al que el recurrente hizo referencia. Sostiene que el recurrente conoció con tiempo suficiente antes de la vista el acto prohibido imputado, el disturbio. Éste se define en el Reglamento 6994 como:
“Consiste en perturbar la paz, la tranquilidad, la seguridad y/o el funcionamiento institucional por medio de gritos, vituperios, conducta tumultuosa, desafíos, provocaciones, lenguaje grosero o profano, sin causar daños a la persona o propiedad.”
Tabla II: Actos prohibidos de nivel II de seguridad, Código 209, Disturbios.
*798La prueba presentada al CDI, según la Procuradora, demostró de manera preponderante la comisión de la conducta prohibida y como foro revisor debemos deferencia a esa determinación que se sostiene en la evidencia que obra en el expediente.
Veamos si el procedimiento disciplinario al que se sometió al recurrente se ajusta al mínimo de garantías reconocidas en estos casos.
La sección 3.1 de la Ley de Procedimiento Administrativo Uniforme, ya citada, dispone que en todo procedimiento adjudicativo formal ante una agencia, se salvaguardarán los siguientes derechos: (a) derecho a una notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial; y (d) derecho a que la decisión se fundamente en el expediente. 3 L.P.R.A. see. 2151. Esto es así porque en su función adjudicativa las agencias administrativas intervienen con intereses libertarios y propietarios del ciudadano. Véase Gutiérrez v. Hernández, res. el 1ro de octubre de 2007, 172 D.P.R._(2007); 2007 J.T.S. 180. Aunque en el campo administrativo no se exige la rigidez de un proceso judicial criminal, es importante que el procedimiento adoptado para adjudicar una cuestión sea justo y equitativo. Magriz v. Empresas Nativas, 143 D.P.R. 63, 70 (1997); López y Otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113-114 (1996).
La LPAU también requiere que en toda querella presentada por una agencia se notifique a las partes, entre otras cosas, los hechos constitutivos de la infracción y las disposiciones legales o reglamentarias por las cuales se imputa la violación. 3 L.P.R.A. see. 2154. Luego, para adjudicar la cuestión formalmente exige la celebración de una vista. La adjudicación tiene que estar basada exclusivamente en la evidencia que obre en el expediente del caso ante la agencia, la que está obligada a fundamentar adecuadamente su decisión. 3 L.P.R.A. sees. 2151 y 2164.
Por su parte, el Reglamento 6994 contenía un proceso detallado para el trámite de una querella disciplinaria. Las Reglas 9 a 18 regulaban el procedimiento desde la presentación de la querella hasta la emisión de la resolución final. En lo que atañe al caso de autos, la Regla 9 disponía:
“REGLA 9 - QUERELLA
A. [...]
B. Contenido de la querella
La querella se redactará en letra de molde o a máquina, conteniendo una descripción clara y detallada del incidente que da lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar del incidente nombre del confinado-imputado, nombres de los testigos, las pruebas obtenidas, como se manejó la prueba, y el código correspondiente al acto prohibido imputado, según surge de las Tablas I, y III del Apéndice.
1. Cuando el querellante es empleado o funcionario de la Administración de Corrección, la querella deberá contener el nombre del empleado en letra de molde y su firma, puesto que ocupa en la Agencia o institución, número de identificación o placa y la fecha de presentación de la querella.
2. [...]
C. Término para radicar la querella
La querella debe presentarse dentro del término de veinticuatro (24) horas después del incidente o dentro del término de veinticuatro (24) horas después de que el personal tuvo conocimiento del incidente excepto justa *799causa o causa fortuito, según define en este Reglamento. [...] Si hay deficiencias en la querella, el Supervisor Correccional de Tumo, o persona designada, puede devolver la querella al querellante o al Oficial Querellante, según sea el caso, para que corrija las mismas.
D. [...]
E. Debidamente cumplimentada la querella y revisada por el supervisor correccional de tumo o persona designada, éste determinará el nivel de severidad aplicable y añadirá el código apropiado en la querella disciplinaria. Al finalizar su tumo, el supervisor correccional de tumo o persona designada, presentará la querella disciplinaria al Oficial de Querellas.
F. Una vez presentada la querella ante el Oficial de Querellas, éste tiene la responsabilidad de:
1. Asignar inmediatamente un número de querella y registrar la querella disciplinaria en una bitácora.
2. Someter al Investigador de Querellas toda querella disciplinaria de Nivel I, II y III, para la correspondiente investigación.
3. [...]
4. Señalar ante al Comité de Disciplina Institucional toda vista de Nivel II y III.
5. Preparar las planillas de notificación para todas las vistas.
G. Dentro del término de un (1) día laborable siguiente a la presentación de la querella disciplinaria ante el Oficial de Querellas, el supervisor correccional de tumo o persona designada notificará al confinado sobre la presentación de la querella en su contra.
1. Se leerá la querella al confinado en voz alta.
2. Se advertirá al confinado los derechos que le asisten durante el procedimiento disciplinario.
a. [•••]
3. Se le entregará copia de la querella disciplinaria presentada en su contra. El confinado deberá firmar acusando haber recibido la misma y las advertencias de rigor. Si el confinado se rehúsa a firmar la querella disciplinaria, será requerida la firma de dos (2) testigos del personal de la institución que puedan afirmar ese hecho.
4. De no ser posible la notificación de la querella disciplinaria al confinado, deberá anotarse en la querella las razones específicas para ello.
5. [...]”.
Regla 9 del reglamento 6994. Énfasis nuestro.
Presentada la querella, se iniciaba la investigación, que se regía por la Regla 10. Ya hemos mencionado que la querella se asignaba al Investigador de Vistas, quien realizaba las entrevistas al recurrente y sus testigos y hacía los informes correspondientes. No se imputa actuación impropia a la Investigadora de Vistas. No hay duda de que las gestiones realizadas por esta funcionaría están cubiertas por la presunción de corrección que *800cobija toda gestión gubernamental realizada en el marco de las funciones asignadas o delegadas por la autoridad concernida. Y hemos visto que el Tribunal Supremo de Puerto Rico reconoció la validez de la intervención de esta figura imparcial en los procesos disciplinarios, para facilitar el descubrimiento de la verdad sin comprometer la seguridad de los sujetos involucrados ni el orden institucional. Por lo dicho, la alegación del recurrente sobre las fallas del proceso seguido en su contra sólo puede ir dirigida al CDI, sobre todo, la relativa a su prerrogativa de citar testigos. Ya tratamos este asunto en el apartado en que discutimos el primer señalamiento de error.
Concentremos, entonces, la atención en la impugnación de la querella y en la determinación emitida por el CDI.
C
Es norma reiterada que los tribunales apelativos han de conceder deferencia a las decisiones de las agencias administrativas porque éstas tienen conocimiento especializado en los asuntos que les han sido encomendados y vasta experiencia en la implantación de sus leyes y reglamentos. Esta doctrina de deferencia judicial presupone una participación restringida y limitada de los tribunales en la revisión de las acciones administrativas, ya que su finalidad es evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor. P.R.T.C. v. Junta Reg. Tel. de P.R., 151 D.P.R. 269, 282 (2000).
La revisión judicial de las determinaciones finales de las agencias administrativas se circunscribe a evaluar: (1) si el remedio concedido por la agencia es el adecuado; (2) si las determinaciones de hechos están sostenidas por la evidencia sustancial que surge de la totalidad de expediente; y (3) si las conclusiones de derecho son correctas, para cuyo escrutinio no tenemos limitación revisora alguna. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2175.
Esta sección de la Ley de Procedimiento Administrativo Uniforme acogió la norma jurisprudencial pautada y reiterada por el Tribunal Supremo durante décadas: los tribunales no alterarán las determinaciones de hechos de un organismo administrativo, si están fundamentados por la evidencia sustancial que surja del expediente administrativo, considerado en su totalidad, y no descartarán la decisión de la agencia si es razonable. El criterio a aplicarse no es si la determinación administrativa es la más razonable o la mejor decisión, a juicio del foro judicial; es simplemente, si la solución es razonable, a la luz del expediente administrativo. Pacheco v. Estancias de Yauco, 160 D.P.R. 409, 431 (2003); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995).
Asimismo, se ha resuelto reiteradamente que los procedimientos y las decisiones de las agencias administrativas gozan do una presunción de regularidad y corrección que debe ser rebatida expresamente por quien las impugne. Vélez v. A.R.P.E., res. el 21 de abril de 2006, 167 D.P.R._, 2006 J.T.S. 78, págs. 1249-1250. La revisión judicial en estos casos se dirige a determinar si la agencia actuó arbitrariamente o de manera tan irrazonable que su actuación constituye un claro abuso de discreción. Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Nuestra función revisora sobre las determinaciones de la Administración de Corrección es, pues, de carácter limitado. Sus decisiones merecen nuestra mayor deferencia judicial, sobre todo cuando se le ha delegado la implantación de una política pública que requiere un alto grado de especialización o control de recursos y competencias institucionales.
En el caso de autos tal parece que la oficial querellante redactó la querella original de prisa, sin referencia al acto prohibido apropiado y sin asignación de número de querella, pero, en el plazo establecido en la Regla 9(G), el Supervisor Correccional de Tumo o el Oficial de Querellas enmendaron el contenido del documento para ajustarlo a los requerimientos reglamentarios y así le fue notificado antes de la vista al recurrente. Éste tuvo la *801asistencia de la Investigadora de Vistas, quien discutió con él el contenido de la querella. También tuvo la oportunidad de presentar su versión de los hechos por escrito y verbalmente. En la vista planteó los argumentos jurídicos que hemos reseñado contra la querella presentada en su contra. Luego, en reconsideración, presentó un extenso escrito en el que argumentó nuevamente las fallas en las que, a su entender, incurrió la Administración de Corrección al tramitar la querella.
Aunque el recurrente nos presenta un formulario de querella con las deficiencias señaladas, lo cierto es que en la misma fecha en que aquélla le fue notificada, aparece la firma del recurrente en la querella enmendada, para acreditar que recibió la segunda versión de la querella con la numeración correcta y el código correspondiente a las alegaciones de la oficial querellante. No nos ha ofrecido el recurrente una explicación clara y coherente de ese hecho. Aunque hubo dos documentos, y así lo admite la parte recurrida, uno de ellos era suficiente para encausarlo administrativamente por la conducta imputada.
Hemos examinado la definición del código 209 y corresponde a la conducta imputada al recurrente, pues se probó en la vista que él increpó con una palabra soez a una oficial correccional, a quien debía respeto como persona y como representante de la institución, en un lugar en el que había confinados y sus visitas y en el que su actitud pudo exacerbar la animosidad de los presentes hacia los oficiales de tumo. Otra oficial escuchó el exabmpto del recurrente y observó su conducta hostil y de rechazo a la directriz de la oficial querellante, porque ésta impidió que los familiares del recurrente y de otros dos confinados se sentaran juntos en la misma fila en el cuarto de visita.
No erró el CDI al acoger la querella y disponer sobre el asunto disciplinario planteado, según se desprendía de la querella número 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 de 13 de junio de 2008.
La resolución recurrida, en la que se halló incurso al señor Rodríguez Carrasquillo, se sostiene en la evidencia sustancial que obra en el expediente administrativo. No tenemos criterios para revocar esa determinación que nos parece razonable.
No hemos de expresamos sobre las sanciones impuestas al recurrente porque no fueron objeto de señalamiento en el recurso de revisión, aunque advertimos que tales sanciones se encuentran entre las reservadas para un acto prohibido de nivel II de seguridad. [3]
IV
Por los fundamentos expresados, se confirma la resolución recurrida por haberse emitido en cumplimiento del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío Comunitarios, Reglamento Núm. 6994 de 29 de junio de 2005, vigente para la fecha en que ocurrieron los hechos en controversia.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 24

. Este Reglamento fue sustituido por el Reglamento Núm. 7748 de 23 de septiembre de 2009, vigente a partir del 22 de octubre del mismo año. No obstante, aun cuando los confinados en las instituciones carcelarias del país atacaron algunas disposiciones del Reglamento 6994 con algún éxito, el Tribunal Supremo de Puerto Rico mantuvo su validez y eficacia hasta su derogación. Así, en López Leyro v. E.L.A., res. el 25 de enero de 2008, 173 D.P.R._(2008), 2008 J.T.S. 29, el Tribunal Supremo reconoció que el Reglamento Disciplinario 6994 establecía la estructura del aparato sancionador de la *802Administración de Corrección y los procedimientos que ésta debe seguir en la tramitación de las querellas presentadas bajo su amparo por los miembros de la población correccional. Id., 2008 J.T.S. 29, a la pág. 726.
Ahora bien, aunque el procedimiento adjudicativo establecido en el Reglamento 6994 era consistente con los parámetros del debido proceso reconocidos por el Tribunal Supremo de los Estados Unidos, advertimos previamente que el Tribunal Supremo de Puerto Rico sentenció que algunas disposiciones de ese reglamento se apartaron de las garantías mínimas establecidas para procedimientos adjudicativos de naturaleza formal por la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2101 et seq. Así, en López Rivera v. Adm. de Corrección, res. el 15 de julio de 2008, 174 D.P.R._(2008), 2008 J.T.S. 141, también se mantuvo la validez del Reglamento 6994, pero se exigió que los procesos de adjudicación de las medidas disciplinarias se ajustaran estrictamente a los parámetros fijados por la LPAU. En este caso, el Tribunal Supremo rechazó el plazo de cinco días concedido por el Reglamento Disciplinario a un confinado para que presentara su moción de reconsideración contra la sanción impuesta. Concluyó que el Administrador no tenía autoridad para establecer un plazo menor al término de 20 días que concede la LPAU para la presentación de una moción de reconsideración contra la determinación de un organismo administrativo.

. Sobre este asunto, observó el Tribunal Supremo de los Estados Unidos:
“The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.”
Wolff v. McDonnell, 418 U.S. a la pág. 562.

. Véase la Tabla V: Sanciones por Actos Prohibidos, Nivel II de Seguridad, del Reglamento 6994, según enmendada por el Reglamento 7411 de 2 de octubre de 2007.