IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN E. MILLER, | § | |
| | § | No. 633, 2015 |
| Plaintiff Below- | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| BRIAN REYNOLDS, BRUCE | § | C.A. No. N14C-06-083 |
| BURTON, PERRY PHELPS, | § | |
| | § | |
| Defendants Below- | § | |
| Appellees. | § | |

Submitted: March 4, 2016
Decided: May 9, 2016

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

# **O R D E R**

This 9th day of May 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The appellant, John Miller, filed this appeal from the Superior Court's final order, dated November 18, 2015, which denied reargument of its November 5, 2015 order granting summary judgment to the appellees on Miller's complaint challenging a prison disciplinary hearing. Miller is an inmate incarcerated at the Vaughn Correctional Center ("VCC"). The appellees are employed by the Department of Correction ("DOC"). We find

no merit to Miller's appeal. Accordingly, we affirm the Superior Court's judgment.

(2) The record reflects that Miller obtained a $6540 default judgment from the Justice of the Peace Court against a former inmate, Robert Dorn. Miller transferred the default judgment to the Superior Court in Civil Action No. S12J-05-282 and sought to execute on it by filing a lien against Dorn's real property. On February 15, 2013, the Superior Court held a hearing on Dorn's motion to stay the scheduled Sheriff's sale of his property. Both Miller and Dorn appeared at the hearing.

(3) During the course of that proceeding, the Superior Court asked Miller why Dorn owed him money. Miller explained that he and Dorn had entered into a contract while they were both in prison together. Miller explained that he contracted to "look[] out for [Dorn's] best interests and, you know, other items that came up. I wouldn't call it protection, body guard services. The man is a handful, to say the least."[1] Miller stated on the record that he explained to Dorn that if Dorn did not want his help, Dorn had the option to go into protective custody or he could rely on the prison guards to protect him, but Dorn chose to "man-up and stay out on the compound

---

[1] Hearing Transcript at 3, *Miller v. Dorn*, C.A. No. S12-05-282 (Del. Super. Feb. 15, 2013).

2

and around … all the inmates."[2]  When the Superior Court questioned the legitimacy of such a contract, Miller stated that "it is for a fact, it's against the rules for inmates to enter into contracts, but I didn't find anything that made it illegal or against the law."[3]

(4)    After some discussion on the record, Dorn agreed to write Miller a check for $3200 in settlement of Miller's default judgment.  The Superior Court stayed the Sheriff's sale of Dorn's property.  Because Miller was not permitted to carry Dorn's check back into the prison, Miller asked the Superior Court to mail the check to the warden of the prison with a letter from the judge explaining the situation so the warden would deposit the check into Miller's account for him.  After the warden received the letter from the Superior Court judge enclosing the check from Dorn to Miller, the DOC opened an investigation into the circumstances regarding Miller's judgment against Dorn.

(5)    On April 17, 2013, DOC Lieutenant Frank Kromka received a copy of the transcript of the February 15, 2013 hearing in *Miller v. Dorn.* As a result of that transcript, Kromka filed an incident report the same day charging Dorn with violating multiple DOC rules, including "extortion,

---

[2] *Id*. at 4.

[3] *Id.*

blackmail, or protection" and "bartering." Kromka also filed a corresponding disciplinary report. Miller signed a copy of that report the same day, indicating that he received a copy of the charges against him, pled not guilty to the allegations, and understood that a hearing would be held. Miller specifically indicated on his signed notice that he did not request counsel or witnesses to be present on his behalf at the hearing, but he did request that his accuser, Kromka, be present.

(6) The disciplinary hearing was held on May 2, 2013 before appellee Staff Lieutenant Brian Reynolds, but was continued after several hours so that Reynolds could conduct a further investigation by interviewing two people identified by Miller as witnesses. Reynolds talked to the two individuals identified by Miller and, without reconvening the hearing, issued his written decision finding Miller guilty of the charged violations on May 7, 2013. The decision set forth Reynolds' specific factual findings in support of each charge. The decision recommended that Miller be punished by losing 730 days of earned good time because of the egregious nature of Miller's contract for protection with Dorn and Miller's past history of conduct. After Miller appealed the decision to Captain Bruce Burton and former VCC Warden Perry Phelps, the violations were upheld but the sanction was reduced to a loss of 365 days of good time.

4

(7)     On June 10, 2014, Miller filed a complaint in the Superior Court, alleging that the disciplinary hearing violated his rights.  On initial review of Miller's complaint under 10 *Del. C.* § 8803(b),[4] the Superior Court issued an order, dated July 14, 2014, summarily dismissing Miller's claims seeking to appeal the outcome of the disciplinary proceedings but allowing his claims concerning the disciplinary process to move forward.[5]  Thereafter, the parties filed cross-motions for summary judgment.  On November 5, 2015, the Superior Court denied Miller's motion for summary judgment and granted the defendants' motion for summary judgment, holding that Miller had failed to establish that he was denied due process at the prison disciplinary hearing.  On November 18, 2015, the Superior Court denied Miller's motion for reargument.  This appeal followed.

(8)     Miller enumerates seven overlapping issues in his opening brief on appeal.  The gist of his arguments is that the Superior Court erred in granting summary judgment on his procedural due process claims because

---

[4]  10 *Del. C.* § 8803(b) (2013).  Section 8803(b) permits the reviewing court, after granting a motion to proceed *in forma pauperis*, to summarily dismiss an indigent plaintiff's complaint if the claims are factually or legally frivolous or malicious.

[5]  *See Proctor v. Taylor*, 2002 WL 1058187 (Del. May 23, 2002) (affirming the Superior Court's summary dismissal of the plaintiff's appeal from the decision of the prison disciplinary board because the Superior Court had no constitutional or statutory jurisdiction to review the DOC's disciplinary decision); *State v. Cubbage*, 210 A.2d 555, 564 (Del. Super. 1965) (holding that the courts have no jurisdiction to sit in judgment of administrative decisions of correctional authorities absent an "arbitrary and capricious abuse of discretion" or "a deprivation or infringement of constitutional rights of inmates").

5

there were material issues of fact in dispute and because the Superior Court incorrectly interpreted *Wolff v. McDonnell*.[6] Miller also includes a vague claim that the Superior Court erred in summarily dismissing his claims challenging the DOC's factual findings and disciplinary sanction.

(9)    We find no merit to Miller's appeal. Although the federal Constitution does *not* guarantee a right to good time credit, the United States Supreme Court recognized in *Wolff v. McDonnell* that, if the State has created a statutory right to good time, as Delaware has done, then a prisoner is entitled "to those minimum procedures appropriate under the circumstances" to ensure that "the state-created right [to good time] is not arbitrarily abrogated."[7] The minimum requirements of procedural due process that must be provided to a prisoner facing the loss of good time as the result of a prison disciplinary hearing are: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary

---

[6] 418 U.S. 539 (1974).

[7] *Id.* at 557.

6

action."[8]  Prison officials have discretion to refuse to call witnesses, so long as the reasons for doing so meet due process requirements.[9]

(10)  Contrary to Miller's suggestion, the determination of whether the standard is satisfied does not require an examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence considered by the disciplinary authority.[10]  Judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain minimal procedures, that the action against him was not arbitrary, and that the ultimate decision is supported by "some evidence in the record."[11]

(11)  The record in this case reflects that Miller was given advance written notice of the disciplinary charges against him and was informed in that written notice that he could be represented and that he could present witnesses.  Miller indicated by his signature that he neither desired counsel nor wished to present any witnesses.  Before the hearing, Miller was permitted to file a 13-page document with 4 pages of attachments, setting

---

[8] *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

[9] *Ponte v. Real*, 471 U.S. 491, 497 (1985).

[10] *Superintendent v. Hill*, 472 U.S. at 455.

[11] *Id* at 454.

7

forth his defenses and objections. In that document, Miller first requested the opportunity to present six witnesses on his behalf.

(12) Miller sought to present witnesses to establish that the DOC officials were aware of Miller's alleged misconduct and delayed bringing disciplinary charges against him in violation of an alleged requirement that charges be brought within 24 hours. Notwithstanding Miller's belated identification of these witnesses, Reynolds, the hearing officer, postponed making any final decision on the outcome of the hearing until he interviewed the only two witnesses who allegedly could provide relevant information.[12] In Reynolds' affidavit attached to the State's motion for summary judgment, Reynolds stated that one witness, a prison paralegal, denied having any knowledge about the investigation into Miller's misconduct. The other witness, a prison official, told Reynolds that the disciplinary report had been completed within 24 hours of receipt of the Superior Court hearing transcript.

(13) After completing those interviews, Reynolds issued a written decision setting forth the evidence he relied on in support of each violation

---

[12] Of the six witnesses identified by Miller, one was deceased and one, Robert Dorn, was no longer in DOC custody. Two other witnesses, both DOC officials, were determined to be unnecessary because Reynolds stipulated to the fact for which Miller sought their testimony (namely, that DOC officials had been aware of Miller's alleged misconduct since at least March when the Superior Court wrote the warden enclosing Dorn's check to Miller).

found.  Reynolds' decision set forth the justification for his recommended sanctions.  Under these circumstances, Miller received all of the due process protections to which he was legally entitled.  The action against him was not arbitrary, and there was more than "some evidence" to support the findings and the disciplinary action taken.

(14)  After careful consideration of the parties' briefs and the record on appeal, it is clear that the Superior Court's judgment must be affirmed. Upon de novo review, we find no error in the Superior Court's grant of summary judgment to the defendants on Miller's procedural claims or in its summary dismissal of Miller's claims attempting to appeal the substance of the DOC disciplinary proceeding.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice